J. Alexander Lawrence
Sara N. Robbin
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York  10104-0050
(212) 468-8000
Attorneys for Defendant

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STRIKE HOLDINGS, LLC<br><br>      Plaintiff,<br><br>  v.<br><br>BILL GINSBURG<br><br>      Defendant. | Civil Action No. 08-7302<br><br>ECF CASE<br><br>**DECLARATION OF BILL GINSBURG IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |

I, BILL GINSBURG, declare as follows:

1.  I submit this declaration in support of Defendant's Motion to Dismiss the Complaint of Plaintiff Strike Holdings, LLC ("Plaintiff"). I am fully familiar with the facts and circumstances set forth herein.

### I.   Former Employment by Plaintiff's Florida Subsidiary

2.  Up until April 25, 2007, I was employed by Plaintiff's Florida subsidiary, Strike Miami, LLC ("Strike Miami") in Miami, Florida.

3.  In addition to Miami, Florida, where I worked, Plaintiff operates bowling alleys in Cupertino, California; Tustin, California; Bethesda, Maryland; New Hyde Park, New York; and the Bowlmor facility in New York City.

4.  I began my employment as a general manager at Strike Miami in or around August 2005, and later held the position of director of operations.

## II. The Separation Agreement at Issue

5. On April 25, 2007, I resigned from employment with Strike Miami and negotiated and entered into a Separation Agreement and General Release (the "Agreement") with Steve Goglia, Plaintiff's President and Chief Operating Officer, while we were both present at Plaintiff's Bethesda, Maryland facility. A true and correct copy of the Agreement is attached hereto by reference as Exhibit A.[1]

6. I understand that Plaintiff claims that I subsequently violated the Agreement by demeaning, criticizing, or deriding Plaintiff or my employment experience with Strike Miami and/or impermissibly retaining, copying, or using Plaintiff's employee list or other confidential information, data, and documents.

7. Contrary to Plaintiff's allegations, I have not violated the Agreement. Moreover, for the purposes of the motion to dismiss, I have not performed any acts in New York on which such allegations could conceivably be based. In fact, during the period on or after April 25, 2007 through to the date of this declaration, I have spent only two days in New York. In those two days in New York, I did not speak to any individual then employed by Plaintiff.

## III. Current Employment with Lucky Strike

8. On or about September 27, 2007, I saw an advertisement from a recruiter referring to general manager position at a restaurant in South Beach Miami. The advertisement did not disclose the name of the establishment.

9. After inquiring about the position, I learned that it was an open general manager position at the Miami location of Lucky Strike Lanes ("Lucky Strike").

---

[1] Absent agreement from Plaintiff to file the Agreement publicly, the Agreement will be filed under seal in accordance with Paragraph 12 thereof.

10. In October of 2007, I commenced my employment with Lucky Strike as general manager of its Miami, Florida facility. I remain employed in this position presently but also function as Director of Guest Services.

11. Recently, Lucky Strike, which operates approximately eighteen bowling lounges in North America, has made public its intentions to open a new facility in New York City. I believe that Plaintiff is unhappy about this development, and commenced this lawsuit in New York against me to send a message to its employees that they should not seek employment with Lucky Strike. A true and correct copy of a February 4, 2008 article from Crain's New York Business referring to the opening of the Lucky Strike facility in Manhattan is attached hereto as Exhibit B.

### IV. Absence of Any Basis to Assert Jurisdiction in New York for Breach of the Agreement

12. At all times relevant to this matter, I have lived and worked in Florida.

13. I have never owned or leased any property or residence in New York, maintained an office, place of business or telephone number in New York, had any bank accounts in New York, or owed or paid taxes to any governmental entity in New York.

14. Although in connection with my employment with Strike Miami, I came to New York on occasion, such as for General Manager's meetings, I have never transacted any personal business in New York.

15. No part of the negotiation or the execution of the Agreement on which Plaintiff bases its claims took place in New York. After executing the Agreement in Maryland on April 25, 2007, I flew home to Florida.

16. In the time since my employment with Strike Miami ended, I have only visited New York for two days from April 4-5, 2008. This visit consisted solely of training sessions at Lucky Strike's West Nyack, New York facility, and other than to fly out of JFK airport, I did not

enter New York City or Long Island, where Plaintiff maintains facilities. Again, in those two days in New York, I did not speak to any individual then employed by Plaintiff.

17. I have not consented to and do not consent to jurisdiction in New York.

**V.    Location of the Witnesses**

18. I believe that most of the witnesses in this action will be located in Florida.

19. Although Plaintiff does not identify them in the Complaint, Plaintiff claims that its former employees have joined Lucky Strike. As to former employees of Plaintiff who subsequently joined Lucky Strike, I am personally aware of only six such individuals. Those individuals are: (1) Dill Singh, who worked for Plaintiff in Miami, Florida and now works for Lucky Strike in Miami, Florida; (2) Ida Acosta, who worked for Plaintiff in Miami, Florida and now works for Lucky Strike in Miami, Florida; (3) Anna Hernandez, who worked for Plaintiff in Miami, Florida and formerly worked for Lucky Strike in Miami, Florida; (4) Caesar Linero, who worked for Plaintiff in Bethesda, Maryland and now works for Lucky Strike in California; (5) Doug Novotny, who worked for Plaintiff in New York and now works for Lucky Strike in New York; and (6) Amy Arcara, who worked for Plaintiff in New York and now works for Lucky Strike in New York.

20. With the exception of Amy Arcara, I believe that each of those individuals will testify that they had already left their employment with Plaintiff before seeking employment with Lucky Strike. Although I understand that Amy Arcara had not yet left her employment with Plaintiff when she sought a position with Lucky Strike, I believe that she will testify that she contacted Lucky Strike seeking employment, not vice versa. I believe that each of these individuals – more than half of which are in Florida – will testify that I did not in any way solicit them to take a job with Lucky Strike. I believe that each of these individuals will further testify

that I have not demeaned, criticized, or derided Plaintiff or my employment experience with Strike Miami in violation of the Agreement.

21. Other nonparty witnesses who would be inconvenienced if this matter were to proceed in New York include Sharon Rowlson, of Five Star Hospitality Executive Recruiters in Florida, who will testify regarding the circumstances under which I joined Lucky Strike.

## VI. Relative Means of the Parties

22. I have limited financial means. Plaintiff has far more resources to litigate this matter.

23. In this action, Plaintiff seeks damages in an excess of $523,798.00, which is more than double the amount I earned in the less than two years that I was employed by Strike Miami.

24. In 2005, I received approximately $50,000 in taxable wages from Strike Miami LLC.

25. In 2006, I received $121,940.66 in taxable wages from Strike Miami LLC.

26. In 2007, I received $55,118.45 in taxable wages from Strike Miami LLC.

27. A true and correct copy of my W-2 Statements for 2006 and 2007 from Strike Miami LLC are attached hereto Exhibit C (with my social security number redacted). I have been unable to locate my W-2 Statement for 2005 from Strike Miami LLC.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 24th day of August, 2008 at Chicago, Illinois.

_____ 8/24/2008
Bill Ginsburg

Because Defendant could not obtain Plaintiff's approval to file this exhibit publicly, Defendant will either:

(1) move to file this exhibit under seal or

(2) file this exhibit publicly once approval to do so is obtained from Plaintiff.

Copyright 2008 Crain Communications
All Rights Reserved
Crain's New York Business

February 4, 2008

**SECTION:** REAL ESTATE; Pg. 9

**LENGTH:** 743 words

**HEADLINE:** Investment firm moving to Citi Center;
Miller Buckfire will take over floor of midtown tower

**BODY:**

Boutique investment banking firm Miller Buckfire signed a 10-year lease for almost 30,000 square feet at the Citigroup Center, at 153 E. 53rd St.

Miller Buckfire will take over the entire 22nd floor of the office tower, between Lexington and Third avenues, in April, according to Robert Baraf, a broker at Cushman & Wakefield. Mr. Baraf and Mark Mandell represented the tenant. Asking rent was $115 a square foot.

Miller Buckfire is currently at 250 Park Ave., where it occupies about 20,000 square feet that it plans to sublease, Mr. Baraf says. The firm was founded in 2002 by Henry Miller and Kenneth Buckfire, who previously led the restructuring groups at Dresdner Kleinwort Wasserstein and Wasserstein Perella & Co.

Frank Doyle and David Kleiner, brokers at Jones Lang LaSalle, represented the landlord, Boston Properties Inc.

--theresa agovino

Sports museum adds office space

the sports museum of America is taking another 10,000 square feet at 26 Broadway, at the corner of Beaver Street. New York City's first major sports museum, which is slated to open in April, had leased 90,000 square feet on the first two floors. The additional space, on the ninth floor, will be used for offices.

Asking rent was $43 a square foot, according to Joe Harkins, a broker at Grubb & Ellis, which represented the tenant. Howard Kesseler of Newmark Knight Frank represented the landlord, Chetrit Group.

Sameer Ahuja, the museum's co-founder and chief operating officer, says it was located downtown because of the proximity to other attractions, such as the Statue of Liberty. The museum will house the first Women's Sports Hall of Fame and will be the new home of the Heisman Trophy.

It will feature thousands of pictures and other sports memorabilia, as well as interactive exhibits.

--andrew buck

New tenant bowls them over

lucky strike lanes, a bowling alley chain based in Hollywood, Calif., is bringing its game to Manhattan. The company has signed a 15-year lease for 33,600 square feet at 1 River Place, a residential tower on 12th Avenue between West 41st and West 42nd streets. The asking rent was $50 a square foot.

Lucky Strike Lanes, known on the West Coast for hosting celebrity-studded parties, will be the first retail tenant to occupy the space since the building was finished nearly seven years ago.

``Ownership has been very selective,'' says Jedd Nero, a CB Richard Ellis broker who represented owner Silverstein Properties in the deal. Over the years, restaurants, car dealerships, dance clubs and supermarkets tried unsuccessfully to land the space.

Catherine Giliberti, a managing director at Silverstein Properties, worked with Mr. Nero on the deal. Grubb & Ellis associates Dan Gronich and Gary Schwartzman negotiated on the tenant's behalf. The bowling alley, which is expected to open in the fall, will be the first of several planned for New York.

``Our intention is to have at least one Lucky Strike in each of the five boroughs,'' founder Steven Foster said in a statement.

--elisabeth butler cordova

Restaurant corners NY Times building

andrew and jonathan Schnipper, the brothers who gave New York the Hale & Hearty Soup chain, have staked their claim on the fifth and final retail space in the New York Times building, at 620 Eighth Ave., between West 40th and West 41st streets.

The Schnippers signed a 20-year lease for a 3,200-square-foot corner space on West 41st. Asking rent in the building was $150 to $200 a square foot. The entrepreneurs plan to open a spot in the style of a modern burger stand. The as-yet-unnamed eatery will serve casual fare like salads and burgers, as well as beer and wine.

``It's an evolution of the roadside stand we all knew growing up,'' says Andrew Schnipper. He and his chef brother, Jonathan, founded Hale & Hearty in 1995 and sold the chain in 2006. The new restaurant, slated to open by August, will have use of a 1,000-square-foot outdoor area and a 1,400-square-foot basement. It will seat about 200.

Candice Dobbs of Dobbs Associates Inc., who represented the Schnippers in the deal, searched for a year to find the right location.

Other retail tenants will include Muji, a Japanese housewares and clothing chain; Japanese restaurant Inakaya; and Italian restaurant Montenapo, from Bice Restaurant Group.

Miriam Harris, a vice president at Forest City Ratner Cos., negotiated the Schnipper deal in-house. Her company co-owns the 1.5-million-square-foot building with The New York Times Co.

--elisabeth butler cordova

## 2006 W-2 and EARNINGS SUMMARY

This blue Earnings Summary section is included with your W-2 to help describe portions in more detail. The reverse side includes general information that you may also find helpful.

**1. The following information reflects your final 2006 pay stub plus any adjustments submitted by your employer.**

| | | | | | |
|---|---|---|---|---|---|
| Gross Pay | 121940.66 | Social Security Tax Withheld Box 4 of W-2 | 5840.40 | FL State Income Tax Box 17 of W-2 | |
| | | | | SUI/SDI Box 14 of W-2 | |
| Fed. Income Tax Withheld Box 2 of W-2 | 28386.34 | Medicare Tax Withheld Box 6 of W-2 | 1768.14 | | |

**2. Your Gross Pay was adjusted as follows to produce your W-2 Statement.**

| | Wages, Tips, other Compensation Box 1 of W-2 | Social Security Wages Box 3 of W-2 | Medicare Wages Box 5 of W-2 | FL State Wages, Tips, Etc. Box 16 of W-2 |
|---|---|---|---|---|
| Gross Pay | 121,940.66 | 121,940.66 | 121,940.66 | |
| Wages Over Limit | N/A | 27,740.66 | | N/A |
| Reported W-2 Wages | 121,940.66 | 94,200.00 | 121,940.66 | |

# REDACTED

**3. Employee W-4 Profile.** To change your Employee W-4 Profile information, file a new W-4 with your payroll dept.

WILLIAM GINSBURG
17880 NE 31 CT.
APT. 2313
AVENTURA, FL 33160

Social Security Number:
Taxable Marital Status: SINGLE
Exemptions/Allowances:
FEDERAL: 1
STATE:    No State Income Tax

© 2006 AUTOMATIC DATA PROCESSING, INC.

---

**W-2 Wage and Tax Statement 2006** — Employee Reference Copy
Copy C for employee's records. OMB No. 1545-0008

| Control number | Dept. | Corp. | Employer use only |
|---|---|---|---|
| 000424 01/V4T | 544000 | A | 73 |

Employer's name, address, and ZIP code:
STRIKE MIAMI LLC
215 PARK AVE S STE 1800
NEW YORK NY 10003

Batch #01113

Employee's name, address, and ZIP code:
WILLIAM GINSBURG
17880 NE 31 CT.
APT. 2313
AVENTURA, FL 33160

| Employer's FED ID number | d |
|---|---|
| 20-0249999 | |

| 1 Wages, tips, other comp. | 2 Federal income tax withheld |
|---|---|
| 121940.66 | 28386.34 |
| 3 Social security wages | 4 Social security tax withheld |
| 94200.00 | 5840.40 |
| 5 Medicare wages and tips | 6 Medicare tax withheld |
| 121940.66 | 1768.14 |
| 7 Social security tips | 8 Allocated tips |
| 9 Advance EIC payment | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a See instructions for box 12 |
| 14 Other | 12b |
| | 12c |
| | 12d |
| | 13 Stat emp. Ret. plan 3rd party sick pay |

| 15 State | Employer's state ID no. | 16 State wages, tips, etc. |
|---|---|---|
| FL | | |
| 17 State income tax | 18 Local wages, tips, etc. | |
| 19 Local income tax | 20 Locality name | |

---

**Federal Filing Copy — W-2 Wage and Tax Statement 2006**
OMB No. 1545-0008

| 1 Wages, tips, other comp. | 2 Federal income tax withheld |
|---|---|
| 121940.66 | 28386.34 |
| 3 Social security wages | 4 Social security tax withheld |
| 94200.00 | 5840.40 |
| 5 Medicare wages and tips | 6 Medicare tax withheld |
| 121940.66 | 1768.14 |

| Control number | Dept. | Corp. | Employer use only |
|---|---|---|---|
| 000424 01/V4T | 544000 | A | 73 |

Employer's name, address, and ZIP code:
STRIKE MIAMI LLC
215 PARK AVE S STE 1800
NEW YORK NY 10003

Employer's FED ID number: 20-0249999

7 Social security tips | 8 Allocated tips
9 Advance EIC payment | 10 Dependent care benefits
11 Nonqualified plans | 12a See instructions for box 12
14 Other | 12b / 12c / 12d
13 Stat emp. Ret. plan 3rd party sick pay

Employee's name, address and ZIP code:
WILLIAM GINSBURG
17880 NE 31 CT.
APT. 2313
AVENTURA, FL 33160

15 State FL | Employer's state ID no. | 16 State wages, tips, etc.
17 State income tax | 18 Local wages, tips, etc.
19 Local income tax | 20 Locality name

---

**FL State Reference Copy — W-2 Wage and Tax Statement 2006**
OMB No. 1545-0008

Same data as above:
Wages 121940.66 / Fed income tax 28386.34
SS wages 94200.00 / SS tax 5840.40
Medicare wages 121940.66 / Medicare tax 1768.14
Control 000424 01/V4T  Dept 544000  Corp A  73
STRIKE MIAMI LLC, 215 PARK AVE S STE 1800, NEW YORK NY 10003
FED ID 20-0249999
WILLIAM GINSBURG, 17880 NE 31 CT., APT. 2313, AVENTURA, FL 33160
State: FL

---

**FL State Filing Copy — W-2 Wage and Tax Statement 2006**
OMB No. 1545-0008

Same data as above:
Wages 121940.66 / Fed income tax 28386.34
SS wages 94200.00 / SS tax 5840.40
Medicare wages 121940.66 / Medicare tax 1768.14
Control 000424 01/V4T  Dept 544000  Corp A  73
STRIKE MIAMI LLC, 215 PARK AVE S STE 1800, NEW YORK NY 10003
FED ID 20-0249999
WILLIAM GINSBURG, 17880 NE 31 CT., APT. 2313, AVENTURA, FL 33160
State: FL

## 2007 W-2 and EARNINGS SUMMARY

**Safe, accurate, FAST! Use IRS e-file** — Visit the IRS Web Site at www.irs.gov/efile

**Employee Reference Copy**

**W-2 Wage and Tax Statement 2007**
OMB No. 1545-0008
Copy C for employee's records

| Control number | Dept. | Corp. | Employer use only |
|---|---|---|---|
| 000424 01/V4T | 544000 | T | 66 |

Employer's name, address, and ZIP code:
STRIKE MIAMI LLC
215 PARK AVE S STE 1800
NEW YORK NY 10003

Batch #01270

Employee's name, address, and ZIP code:
WILLIAM GINSBURG
17880 NE 31 CT.
APT. 2313
AVENTURA, FL 33160

Employer's FED ID number: 20-0249999

| Box | Description | Amount |
|---|---|---|
| 1 | Wages, tips, other comp. | 55118.45 |
| 2 | Federal income tax withheld | 13015.56 |
| 3 | Social security wages | 55118.45 |
| 4 | Social security tax withheld | 3417.34 |
| 5 | Medicare wages and tips | 55118.45 |
| 6 | Medicare tax withheld | 799.22 |
| 7 | Social security tips | |
| 8 | Allocated tips | |
| 9 | Advance EIC payment | |
| 10 | Dependent care benefits | |
| 11 | Nonqualified plans | |
| 12a | See instructions for box 12 | |
| 12b | | |
| 12c | | |
| 12d | | |
| 13 | Stat emp / Ret. plan / 3rd party sick pay | |
| 14 | Other | |
| 15 | State: FL, Employer's state ID no. | |
| 16 | State wages, tips, etc. | |
| 17 | State income tax | |
| 18 | Local wages, tips, etc. | |
| 19 | Local income tax | |
| 20 | Locality name | |

---

This blue Earnings Summary section is included with your W-2 to help describe portions in more detail. The reverse side includes general information that you may also find helpful.

1. The following information reflects your final 2007 pay stub plus any adjustments submitted by your employer.

| | Amount | | Amount |
|---|---|---|---|
| Gross Pay | 55118.45 | Social Security Tax Withheld (Box 4 of W-2) | 3417.34 |
| | | FL State Income Tax (Box 17 of W-2) | |
| | | SUI/SDI (Box 14 of W-2) | |
| Fed. Income Tax Withheld (Box 2 of W-2) | 13015.56 | Medicare Tax Withheld (Box 6 of W-2) | 799.22 |

2. Your Gross Pay was adjusted as follows to produce your W-2 Statement.

| | Wages, Tips, other Compensation Box 1 of W-2 | Social Security Wages Box 3 of W-2 | Medicare Wages Box 5 of W-2 | FL State Wages, Tips, Etc. Box 16 of W-2 |
|---|---|---|---|---|
| Gross Pay | | | | |
| Reported W-2 Wages | 55,118.45 | 55,118.45 | 55,118.45 | |
| | 55,118.45 | 55,118.45 | 55,118.45 | |

**REDACTED**

3. Employee W-4 Profile. To change your Employee W-4 Profile information, file a new W-4 with your payroll dept.

WILLIAM GINSBURG
17880 NE 31 CT.
APT. 2313
AVENTURA, FL 33160

Social Security Number: ___
Taxable Marital Status: SINGLE
Exemptions/Allowances:
FEDERAL: 1
STATE: No State Income Tax

© 2007 ADP, INC.

--- Fold and Detach Here ---

**Federal Filing Copy — W-2 Wage and Tax Statement 2007**

| 1 Wages, tips, other comp. | 55118.45 | 2 Federal income tax withheld | 13015.56 |
| 3 Social security wages | 55118.45 | 4 Social security tax withheld | 3417.34 |
| 5 Medicare wages and tips | 55118.45 | 6 Medicare tax withheld | 799.22 |

Control number: 000424 01/V4T  Dept: 544000  Corp: T  Employer use only: 66

STRIKE MIAMI LLC
215 PARK AVE S STE 1800
NEW YORK NY 10003

Employer's FED ID number: 20-0249999

WILLIAM GINSBURG
17880 NE 31 CT.
APT. 2313
AVENTURA, FL 33160

---

**FL State Reference Copy — W-2 Wage and Tax Statement 2007**

| 1 Wages, tips, other comp. | 55118.45 | 2 Federal income tax withheld | 13015.56 |
| 3 Social security wages | 55118.45 | 4 Social security tax withheld | 3417.34 |
| 5 Medicare wages and tips | 55118.45 | 6 Medicare tax withheld | 799.22 |

Control number: 000424 01/V4T  Dept: 544000  Corp: T  Employer use only: 66

STRIKE MIAMI LLC
215 PARK AVE S STE 1800
NEW YORK NY 10003

Employer's FED ID number: 20-0249999

WILLIAM GINSBURG
17880 NE 31 CT.
APT. 2313
AVENTURA, FL 33160

---

**FL State Filing Copy — W-2 Wage and Tax Statement 2007**

| 1 Wages, tips, other comp. | 55118.45 | 2 Federal income tax withheld | 13015.56 |
| 3 Social security wages | 55118.45 | 4 Social security tax withheld | 3417.34 |
| 5 Medicare wages and tips | 55118.45 | 6 Medicare tax withheld | 799.22 |

Control number: 000424 01/V4T  Dept: 544000  Corp: T  Employer use only: 66

STRIKE MIAMI LLC
215 PARK AVE S STE 1800
NEW YORK NY 10003

Employer's FED ID number: 20-0249999

WILLIAM GINSBURG
17880 NE 31 CT.
APT. 2313
AVENTURA, FL 33160