J. Alexander Lawrence
Sara N. Robbin
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104-0050
(212) 468-8000
Attorneys for Defendant

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BILL GINSBURG,<br><br>    Plaintiff,<br><br>  v.<br><br>STRIKE HOLDINGS, LLC,<br><br>    Defendant. | Civil Action No. 08 CV 7302<br><br>ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
AND IMPROPER VENUE, ALTERNATIVELY TO TRANSFER
TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF FLORIDA**

## TABLE OF CONTENTS

            **Page**

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 1

ARGUMENT ......................................................................................................................... 3

I.    Because Ginsburg is Not Subject to Personal Jurisdiction in New York, Rule 12(b)(2) Dismissal is Proper ............................................................................ 4

       A.    Ginsburg is Not Subject to General Jurisdiction in New York ................. 4

       B.    Ginsburg is Not Subject to Specific Jurisdiction in New York ................ 6

II.   If Not Dismissed, the Court Should Exercise its Discretion to Transfer This Action to the Southern District of Florida Because Venue is Improper ........ 9

III.  Alternatively, the Court Should Exercise its Discretion to Transfer This Action to the Southern District of Florida Because it is a More Convenient Forum ..................................................................................................................... 10

CONCLUSION ................................................................................................................... 14

## TABLE OF AUTHORITIES

Page

### CASES

Amigo Foods Corp. v. Marine Midland Bank-New York,
    39 N.Y.2d 391, 348 N.E.2d 581, 384 N.Y.S.2d 124 (1976)………..…………………………....6

Anchor Savings Bank v. Transamerica Insurance Co.,
    634 F. Supp. 398 (S.D.N.Y. 1986)……………………………………………………………...…12

APA Excelsior III L.P. v. Premiere Technologies, Inc.,
    49 F. Supp. 2d 664 (S.D.N.Y. 1999)…..………………………………………………………....11

Bank Brussels Lambert v. Fiddler Gonzales & Rodriguez,
    171 F.3d 779 (2d Cir. 1999)………………………………………………………...……4

Beacon Enterprises, Inc. v. Menzies,
    715 F.2d 757 (2d Cir. 1983)…………………………………………………………………...4

Berman v. Informix Corp.,
    30 F. Supp. 2d 653 (S.D.N.Y. 1998)……………………….......…………….………13

Brinkmann v. Adrian Carriers, Inc.,
    29 A.D.3d 615, 815 N.Y.S.2d 196 (2d Dep't 2006)……………………………………….....5

Centennial Insurance Co. v. Burlington Air Express Inc.,
    97 Civ. 8512 (DLC), 1998 U.S. Dist. Lexis 8910 (S.D.N.Y. 1998)………..………....…12

Chong v. Healthtronics, Inc.,
    CV-06-1287 (SJF) (MLO), 2007 U.S. Dist. LEXIS 45956 (E.D.N.Y. June 20, 2007)…....13

Dictaphone Corp. v. Gagnier,
    No. 3:05 CV 266 (CFD), 2006 U.S. Dist. LEXIS 11942 (D. Conn. Mar. 12, 2006)………10

EAC System, Inc. v. Chevie,
    154 A.D.2d 813, 546 N.Y.S.2d 252 (3d Dep't 1989)……………………………………7, 8

Elam Electroluminescent Industries, Ltd. v. R.I. Novelty, Inc.,
    04 Civ. 7205 (LMM), 2005 U.S. Dist. Lexis 12984 (S.D.N.Y. June 28, 2005)…..…...10, 12

Faherty v. Fender,
    572 F. Supp. 142 (S.D.N.Y. 1983)……………………......…….……..…………..……7

Finesurgic, Inc. v. Davis,
    148 A.D.2d 414, 538 N.Y.S. 2d 568 (2d Dep't 1989)………………………………...……7

## TABLE OF AUTHORITIES

Page

Frummer v. Hilton Hotels International, Inc.,
    19 N.Y.2d 533, 227 N.E.2d 851, 281 N.Y.S.2d 41 (1967) ………….....…………..………4

Interested London Underwriters v. Kelly Global Logistics, Inc.,
    06 Civ. 5845 (PKL), 2008 U.S. Dist. LEXIS 15768 (S.D.N.Y. Feb. 29, 2008)…………..10

Lancaster v. Colonial Motor Freight Line, Inc.,
    177 A.D.2d 152, 581 N.Y.S.2d 283 (1st Dep't 1992).......................................................5

Laufer v. Ostrow,
    55 N.Y.2d 305, 434 N.E.2d 692, 449 N.Y.S.2d 456 (1982)………………...……….....…5

Martin E. Segal Co. v. Barton,
    612 F. Supp. 935 (S.D.N.Y. 1985)……………………………………………………..….9

National Patent Development Corp. v. American Hospital Supply Corp.,
    616 F. Supp. 114 (S.D.N.Y. 1984)……………………………………………….....…….12

Palmer v. Globalive Communications Corp.,
    07 Civ. 038 (MGC), 2008 U.S. Dist. LEXIS 58045 (S.D.N.Y. Aug. 1, 2008)…....…....…5

Pavlo v. James,
    437 F. Supp. 125 (S.D.N.Y. 1977)…………………………….…..………...………….9

Peter Lisec Glastechnische Industrie GmbH et al. v. Lenhardt Maschinenbau GmbH,
    173 A.D.2d 70, 577 N.Y.S.2d 803 (1st Dep't 1991)………….…….…..………......7

PI, Inc. v. Quality Products,
    907 F. Supp. 752 (S.D.N.Y. 1995)………………….…………………………….……6

Reinhard v. Dow Chemical Co.,
    07 Civ. 3641 (RPP), 2007 U.S. Dist. LEXIS 59242 (S.D.N.Y. Aug. 13, 2007)…..…....11, 12

Riblet Products Corp. v. Nagy,
    191 A.D.2d 626, 595 N.Y.S. 2d 228 (2d Dep't 1993)………………………………....9

Saltzberg v. TM Sterling/Austin Associates, Ltd.,
    746 F. Supp. 1225 (S.D.N.Y 1990)…………………...……………………….…….....13

Schaeffer v. Village of Ossining,
    58 F.3d 48 (2d Cir. 1995)……………………………………………………….…..….9

Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC,
    450 F.3d 100 (2d Cir. 2006)………………………………………………...…….....7

# TABLE OF AUTHORITIES

**Page**

Totilo v. Herbert,
 07 Civ. 10991 (LAK), 2008 U.S. Dist. LEXIS 17263 (S.D.N.Y. Mar. 5, 2008)………...13

ZPC 2000, Inc. v. SCA Group, Inc.,
 86 F. Supp. 2d 274 (S.D.N.Y 2000)……………………………...……………………..11

## STATUTES

28 U.S.C. § 1404(a)……………………………………………………………….………1, 10, 11

28 U.S.C. § 1406(a)…………………………………………………………………......…1, 9, 10

C.P.L.R. § 301……………………………………………………………………….……...4, 5, 9

C.P.L.R. § 302(a)…………………………………………………………………………4, 6, 7, 8, 9

**PRELIMINARY STATEMENT**

Plaintiff Strike Holdings LLC ("Plaintiff") has brought this breach of contract action against Defendant William Ginsburg ("Ginsburg"), a former employee of Plaintiff's Florida subsidiary, as a means to deter Plaintiff's current employees from leaving to work for a rival bowling alley and restaurant chain.  In bringing this action against Ginsburg, Plaintiff ignores the fact that it has no basis to force Ginsburg, a resident of Florida, to defend himself in the courts of New York.  Ginsburg is not subject to personal jurisdiction in New York.

Thus, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, Ginsburg respectfully requests that the Court dismiss this action for lack of personal jurisdiction.  Plaintiff has failed to state any grounds to assert jurisdiction over Ginsburg.  Ginsburg does not reside, own property, or work in New York, nor does he have any of the other contacts necessary to establish personal jurisdiction under New York's long-arm statutes.  Plaintiff alleges no cause of action that occurred in New York or arose out of any contacts with New York.  Therefore, all claims against Ginsburg should be dismissed, or in the alternative, transferred to the United States District Court for the Southern District of Florida, pursuant to 28 U.S.C. § 1406(a) or § 1404(a).

**STATEMENT OF FACTS**

Plaintiff is a Delaware limited liability company authorized to conduct business in New York State.  (Compl. ¶ 1.)  In addition to Miami, Florida, where Ginsburg was employed, Plaintiff operates bowling alleys in Cupertino, California; Tustin, California; Bethesda, Maryland; New Hyde Park, New York; and the Bowlmor facility in New York City.  (Ginsburg Decl. ¶ 3.)  Plaintiff has asserted causes of action against Ginsburg arising out of an alleged breach of a Separation Agreement and General Release (the "Agreement"), by which Ginsburg

resigned from his employment with Plaintiff's Florida subsidiary, Strike Miami LLC ("Strike Miami"). (Compl. ¶ 5.)

Ginsburg is a resident of Aventura, Florida. (Compl. ¶ 2.) Ginsburg has never owned or leased any property in New York, maintained an office or telephone number in New York, had any bank accounts in New York, or owed or paid taxes to any governmental entity in New York. (Ginsburg Decl. ¶ 13.) Up until April 25, 2007, Ginsburg was an employee of Strike Miami in Miami, Florida. (Id. at ¶ 2.) Ginsburg began his employment with Strike Miami as a general manager in or around August 2005, and later held the position of director of operations. (Id. at ¶ 4.)

On April 25, 2007, Ginsburg negotiated and entered into the Agreement with Steve Goglia, Plaintiff's President and Chief Operating Officer, while both were present at Plaintiff's Bethesda, Maryland facility. (Id. at ¶ 5.) No part of the negotiation or the execution of the Agreement took place in New York. (Id. at ¶ 15.) After executing the Agreement in Maryland, Ginsburg flew home to Florida. (Id.)

On or about September 27, 2007, almost six months after leaving his employment with Strike Miami, Ginsburg saw an advertisement from a recruiter for an open general manager position at a restaurant in South Beach, Miami. (Id. at ¶ 8.) The advertisement did not disclose the name of the establishment. (Id.) After inquiring about the position, Ginsburg learned that it was an open general manager position at the Miami location of Lucky Strike Lanes ("Lucky Strike"). (Id. at ¶ 9.) Lucky Strike operates approximately eighteen high-end bowling lounges across North America, including a facility in Miami, Florida. (Id. at ¶ 11.) In October of 2007, Ginsburg commenced employment with Lucky Strike as general manager of its Miami, Florida facility, and remains employed in this position presently but also functions as director of guest services. (Id. at ¶ 10.) Recently, Lucky Strike has made public its intentions to open a new

facility in New York City.  (Id. at ¶ 11.)  Plaintiff is apparently unhappy about this development.  (Id.)  Clearly, seeking to send a message to its employees that they better not look for a job with Lucky Strike, Plaintiff commenced this lawsuit in New York against Ginsburg.  (Id.)

Plaintiff's breach of contract claims are based on the following alleged conduct.  First, Plaintiff claims that Ginsburg retained and/or copied Plaintiff's employee list and other confidential information and used such information to solicit Plaintiff's employees to work for Lucky Strike.  (Compl. ¶¶ 11, 17 & 23.)  Second, Plaintiff claims that Ginsburg demeaned, criticized, and/or derided his employment with Plaintiff.  (Compl. ¶¶ 17 & 23.)  In its Verified Complaint, Plaintiff does not allege – and could not allege – that any of these acts took place in New York.

At all times relevant to this matter, Ginsburg has lived and worked in Florida.  (Ginsburg Decl. ¶ 12.)  In fact, in the time since his employment with Strike Miami ended, Ginsburg has been in New York for only two days, and this visit took place almost a full year after Ginsburg had resigned his employment with Strike Miami.  (Id. at ¶¶ 7 & 16.)  This visit consisted solely of training sessions at Lucky Strike's West Nyack, New York facility on April 4-5, 2008, and other than to fly out of JFK Airport, Ginsburg did not enter New York City or Long Island, where Plaintiff maintains facilities.  (Id. at ¶ 16.)  Additionally, in those two days in New York, Ginsburg did not speak to any individual then employed by Plaintiff.  (Id. at ¶¶ 7 & 16.)

## ARGUMENT

Ginsburg lacks the requisite contacts with New York for this Court to exercise personal jurisdiction over him.  Plaintiff's allegations fail to establish that Ginsburg is subject to long-arm jurisdiction in New York, or that there is any other basis for personal jurisdiction.  Ginsburg, therefore, respectfully submits that this case should be dismissed, or in the alternative,

ny-828528                                              -3-

transferred to the United States District Court for the Southern District of Florida, where Ginsburg would be subject to personal jurisdiction and venue would be proper.

**I.    BECAUSE GINSBURG IS NOT SUBJECT TO PERSONAL JURISDICTION IN NEW YORK, RULE 12(b)(2) DISMISSAL IS PROPER.**

Plaintiff has the burden to establish that Ginsburg is subject to personal jurisdiction in New York.  See <u>Bank Brussels Lambert v. Fiddler Gonzales & Rodriguez</u>, 171 F.3d 779, 784 (2d Cir. 1999) ("When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant").  And the burden is a high one.  Unlike many states which permit the assertion of personal jurisdiction to the fullest extent permitted under the Constitution, "[a]s interpreted by the New York state courts, [New York's long-arm statutes, C.P.L.R.] §§ 301 and 302 do not extend personal jurisdiction to the limits of due process."  <u>Beacon Enters., Inc. v. Menzies</u>, 715 F.2d 757, 764 n.6 (2d Cir. 1983).

In this case, Ginsburg is not subject to personal jurisdiction in the courts of New York, because:  (1) Ginsburg is not present in New York (<u>see</u> C.P.L.R. § 301); and (2) the alleged conduct that forms the basis for Plaintiff's causes of action, all of which arise out of an alleged breach of the Agreement, have no connection with New York (<u>see</u> C.P.L.R. § 302(a)).

**A.    Ginsburg Is Not Subject to General Jurisdiction in New York.**

Plaintiff cannot claim that Ginsburg is subject to general jurisdiction in New York.  The New York law of general jurisdiction provides that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore."  C.P.L.R. § 301. The New York Court of Appeals has interpreted this provision to mean that "a foreign [defendant] is amenable to suit in [New York] if it is engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction."  <u>Frummer v.</u>

Hilton Hotels Int'l, Inc., 19 N.Y.2d 533, 536, 227 N.E.2d 851, 281 N.Y.S.2d 41 (1967) (internal quotation marks omitted).

It is fundamental, however, that to find general personal jurisdiction over an individual, the individual's business conduct must have been for himself and not for a corporate entity. Laufer v. Ostrow, 55 N.Y.2d 305, 313, 434 N.E.2d 692, 449 N.Y.S.2d 456 (1982); Lancaster v. Colonial Motor Freight Line, Inc., 177 A.D.2d 152, 159, 581 N.Y.S.2d 283 (1st Dep't 1992); Brinkmann v. Adrian Carriers, Inc., 29 A.D.3d 615, 617, 815 N.Y.S.2d 196 (2d Dep't 2006) ("An individual cannot be subject to jurisdiction under CPLR 301 unless he is doing business in New York as an individual rather than on behalf of a corporation"); see, e.g., Palmer v. Globalive Commc'ns Corp., 07 Civ. 038 (MGC), 2008 U.S. Dist. LEXIS 58045, at *11 (S.D.N.Y. Aug. 1, 2008) ("Based on the evidence presented by Palmer, Lacavera's primary activity in New York every two or three months was on behalf of corporations, and his personal investment activity in New York was not continuous and systematic").

At all times relevant to this matter, Ginsburg has lived and worked in Florida. (Compl. ¶ 2; Ginsburg Decl. ¶ 12.) Although Ginsburg came to New York on occasion, such as for general manager's meetings, in connection with his employment with Strike Miami, Ginsburg has never transacted any personal business in New York. (Ginsburg Decl. ¶ 14.) Additionally, Ginsburg has no residence, property, office, or place of business in New York. (Id. at ¶ 13.) In fact, since resigning his employment with Strike Miami in April 2007, Plaintiff has spent only two days in the State of New York, all on behalf of his current employer. (Id. at ¶¶ 7 & 16.) Thus, Plaintiff cannot establish general jurisdiction over Ginsburg through physical presence in New York. Additionally, Ginsburg has not consented and does not consent to jurisdiction in New York. (Id. at ¶ 17.)

**B.     Ginsburg Is Not Subject to Specific Jurisdiction in New York.**

Furthermore, Plaintiff cannot establish any basis for subjecting Ginsburg to specific jurisdiction in New York.  Under New York's long-arm statute, "[a]s to a cause of action arising from any of the acts enumerated in [the] section, a court may exercise personal jurisdiction over any non-domiciliary. . . who in person or through an agent:

> (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> (2) commits a tortious act within the state . . . ; or
>
> (3) commits a tortious act without the state causing injury to person or property within the state . . . , if he
>
>> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>>
>> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> (4) owns, uses or possesses any real property situated within the state.

C.P.L.R. § 302(a).

Ginsburg is not subject to jurisdiction under any of the four enumerated bases set forth in Section 302(a).  Jurisdiction is not found under both Sections 302(a)(2) and (3) because Plaintiff does not allege any tortious acts committed by Ginsburg.  Courts have found that a breach of a contract alone will not form a basis for long-arm jurisdiction under Sections 302(a)(2) and (3). See PI, Inc. v. Quality Prods., 907 F. Supp. 752, 760 (S.D.N.Y. 1995) ("To satisfy New York' long-arm statute [Sections 302(a)(2) and (3)], the complaint must adequately frame a cause of action in tort arising from those acts") (internal quotation marks omitted); Amigo Foods Corp. v. Marine Midland Bank-New York, 39 N.Y.2d 391, 396, 348 N.E.2d 581, 384 N.Y.S.2d 124 (1976) ("We find no merit in the additional argument that a breach of a contract constitutes a

tortious act and may form a basis for long-arm jurisdiction" under Sections 302(a)(2) and (3)). All of Plaintiff's claims are for breach of contract. (Compl. ¶¶ 4-28.) Additionally, jurisdiction does not exist under Section 302(a)(4) because Ginsburg does not own, use, or possess any real property in New York. (Ginsburg Decl. ¶ 13.) Thus, Plaintiff's only hope will be to attempt to establish a basis for personal jurisdiction under Section 302(a)(1) by claiming that Ginsburg transacted business in New York out of which the breach of contract claims arose. Nonetheless, jurisdiction is not found under this Section either.

To establish jurisdiction pursuant to Section 302(a)(1), Plaintiff must show that Ginsburg transacted business in New York and that the claims arise from, have an "articulable nexus" with, or are "substantially related to" the transaction. Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006) (citations omitted); Finesurgic, Inc. v. Davis, 148 A.D.2d 414, 415, 538 N.Y.S. 2d 568 (2d Dep't 1989) (affirming dismissal for lack of personal jurisdiction where defendants engaged in no purposeful activities in New York in relation to their transaction with the plaintiffs).[1] Courts have found that "[u]nder this provision, it is the activities of defendant with respect to the specific contract at issue which determine whether defendant is subject to jurisdiction." Peter Lisec Glastechnische Industrie GmbH et al. v. Lenhardt Maschinenbau GmbH, 173 A.D.2d 70, 72, 577 N.Y.S.2d 803 (1st Dep't 1991) (internal quotation marks omitted) (dismissing for lack of personal jurisdiction absent a showing that contacts in New York were related to plaintiff's claim); Faherty v. Fender, 572 F. Supp. 142, 146 n.3 (S.D.N.Y. 1983) (dismissing for lack of personal jurisdiction because the cause of action did not arise out of activities that occurred in New York). Of course, more than a remote causal

---

[1] Even where a contract contains a New York choice of law provision, as it does here, "the absence of a substantial relationship between [a] defendant's New York business activities and the causes of action asserted in [a] plaintiff's complaint [is still] dispositive." EAC System, Inc. v. Chevie, 154 A.D.2d 813, 814, 546 N.Y.S. 2d 252 (3d Dep't 1989); see also Peter Lisec Glastechnische Industrie GmbH et al. v. Lenhardt Maschinenbau GmbH, 173 A.D.2d 70, 72, 577 N.Y.S. 2d 803 (1st Dep't 1991) (a choice of law clause, "absent more, is insufficient to warrant long-arm jurisdiction pursuant to C.P.L.R. 302 (a)(1)").

connection between a defendant's activity in the state and a plaintiff's claim is required to satisfy the "substantial relationship" test. Id. at 146-147.

Plaintiff cannot establish that any contacts that Ginsberg may have with New York relate in any way to the alleged breach of the Agreement. Ginsburg did not execute or negotiate the Agreement in New York; this all took place in Maryland. (Ginsburg Decl. ¶ 15.) Furthermore, Ginsburg has not performed any acts in New York on which Plaintiff's allegations could conceivably be based. (Id. at ¶ 7.) In fact, in the time since his employment with Strike Miami ended, Ginsburg has only visited New York for two days, and other than flying out of JFK airport, has not set foot in either New York City or Long Island, where Plaintiff maintains facilities. (Id. at ¶¶ 7 & 16.) Thus, even assuming *arguendo* that Ginsburg breached the Agreement, which he did not, such breach did not occur in New York or relate in any way to New York.

Furthermore, Ginsburg's visits to New York in connection with his prior employment with Strike Miami are irrelevant to the jurisdictional analysis, as they bear no relation to Plaintiff's breach of contract claims. Plaintiff's claims for alleged misuse of confidential information and disparagement all arise out of the Agreement, which was executed in Maryland after Ginsburg's resignation from Strike Miami. Courts have specifically held that when a cause of action arises out of an agreement executed after defendant's employment has ended, contacts in the state that occurred during defendant's prior role as an employee will not establish personal jurisdiction. EAC System, 154 A.D.2d at 813-814 (Where the "causes of action. . . do not arise out of defendant's earlier activities [in New York] as a corporate officer and director," such activities do not "'bear a substantial relationship to the transaction out of which the instant causes of action arose'"). A claim does not arise out of the transaction of business within the meaning of C.P.L.R. § 302(a)(1) where a "[d]efendant's alleged misconduct. . . is sufficiently

separated by time and geography from his New York business dealings." Id. at 814. Additionally, courts have also found that a defendant's travels to New York will not confer jurisdiction when such "visits to New York or the business conducted during those visits [were not] related in a substantial or proximate manner to the alleged violation," regardless of the frequency or extent of such visits. Martin E. Segal Co. v. Barton, 612 F. Supp. 935, 937 (S.D.N.Y. 1985) ("Segal has not established, or even alleged, that the visits to New York or the business conducted during those visits is related in a substantial or proximate manner to the alleged violations of the non-competition agreement"); see also Pavlo v. James, 437 F. Supp. 125, 128 (S.D.N.Y. 1977) (dismissing for lack of jurisdiction where, despite defendant's travels to New York on business, such trips were unrelated to any claims asserted by the plaintiff). Absent a substantial or meaningful connection with the cause of action, a defendant's physical presence in the forum state "cannot talismatically transform any and all business dealings into business transactions under C.P.L.R. § 302(a)(1)." Riblet Prods. Corp. v. Nagy, 191 A.D.2d 626, 626, 595 N.Y.S. 2d 228 (2d Dep't 1993) (internal quotation marks omitted).

Under the bases of asserting general or specific jurisdiction set forth in Sections 301 and 302(a), Ginsburg is not subject to personal jurisdiction in New York. Therefore, this action should be dismissed under Rule 12(b)(2).

**II.    IF NOT DISMISSED, THE COURT SHOULD EXERCISE ITS DISCRETION TO TRANSFER THIS ACTION TO THE SOUTHERN DISTRICT OF FLORIDA BECAUSE VENUE IS IMPROPER**.

Because Ginsburg is not subject to personal jurisdiction in New York, venue is improperly laid in this district, and the court has the discretion to transfer the action to another district in which venue is proper pursuant to Section 1406(a). Schaeffer v. Village of Ossining, 58 F.3d 48, 50 (2d Cir. 1995) (holding that when venue is improper, Section 1406(a) applies). Section 1406(a) specifically provides that "[t]he district court of a district in which is filed a case

laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); see also Dictaphone Corp. v. Gagnier, No. 3:05 CV 266 (CFD), 2006 U.S. Dist. LEXIS 11942, at *17 (D. Conn. Mar. 12, 2006) ("The statute has been interpreted to mean that an otherwise proper venue where the plaintiff could not obtain personal jurisdiction over the defendant constitutes a 'wrong division or district'") (quoting Corke v. Sameiet M.S. Song of Norway, 572 F.2d 77, 79 (2d Cir. 1978)); Interested London Underwriters v. Kelly Global Logistics, Inc., 06 Civ. 5845 (PKL), 2008 U.S. Dist. LEXIS 15768, at *15 (S.D.N.Y. Feb. 29, 2008) (transferring the case from a district lacking personal jurisdiction to a district in which both jurisdiction and venue would be proper). In this case, the Southern District of Florida is a district in which the claims could have been brought since the sole defendant resides there and as a result, personal jurisdiction would be found and venue would be proper. (Ginsburg Decl. ¶ 12.) Thus, if the action is not dismissed, it should be transferred to the Southern District of Florida pursuant to Section 1406(a).

**III.    ALTERNATIVELY, THE COURT SHOULD EXERCISE ITS DISCRETION TO TRANSFER THIS ACTION TO THE SOUTHERN DISTRICT OF FLORIDA BECAUSE IT IS A MORE CONVENIENT FORUM.**

Even if Plaintiff could establish personal jurisdiction over Ginsburg in New York, which it cannot, the case should still be transferred to the Southern District of Florida because it is a more convenient and practical forum. Section 1404(a) permits "the transfer of any action to another district in which it might have been brought if such a transfer would serve the convenience of the parties and witnesses and be in the interest of justice. 28 U.S.C. § 1404(a). The purpose of a 1404(a) transfer is that "where a 'civil action' to vindicate a wrong . . . presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can . . . transfer the whole action to the more convenient court." Elam

Electroluminescent Indus., Ltd. v. R.I. Novelty, Inc., 04 Civ. 7205 (LMM), 2005 U.S. Dist. LEXIS 12984, at *3 (S.D.N.Y. June 28, 2005) (granting transfer pursuant to Section 1404(a)).

A district court maintains broad discretion in deciding whether to transfer a case. APA Excelsior III L.P. v. Premiere Techs., Inc., 49 F. Supp. 2d 664, 667 (S.D.N.Y. 1999). Relevant factors in determining if a Section 1404(a) transfer motion should be granted are:

(1) the place where the operative facts occurred;

(2) the convenience to parties;

(3) the convenience of witnesses;

(4) the relative ease of access to sources of proof;

(5) the availability of process to compel attendance of unwilling witnesses;

(6) the plaintiff's choice of forum;

(7) the forum's familiarity with the governing law;

(8) the relative means of the parties;

(9) weight accorded a plaintiff's choice of forum; and

(10) trial efficiency and the interests of justice.

Id. at 667; Reinhard v. Dow Chem. Co., 07 Civ. 3641 (RPP), 2007 U.S. Dist. LEXIS 59242, at *9-10 (S.D.N.Y. Aug. 13, 2007). The vast majority of these factors, including both of the most important factors, point to the Southern District of Florida.

First, the Southern District of Florida has a considerably greater connection to the operative facts than this District. Courts in this District have held that "the location of operative events is a 'primary factor' in determining a motion to transfer venue." ZPC 2000, Inc. v. SCA Group, Inc., 86 F. Supp. 2d 274, 279 (S.D.N.Y. 2000) (quoting Smart v. Goord, 21 F. Supp. 2d 309, 316 (S.D.N.Y. 1998). Although the plaintiff's choice of forum is certainly a factor, where the "'operative facts have only a tenuous connection with the forum chosen,' the plaintiff's

choice should be accorded 'little weight.'" Elam Electroluminescent Indus., 2005 U.S. Dist. LEXIS 12984, at *5 (granting transfer pursuant to Section 1404(a)).  The operative facts here do not relate to New York in any way.  First of all, the Agreement on which Plaintiff bases its claims was neither executed nor negotiated in New York.  (Ginsburg Decl. ¶ 15.)  Additionally, Plaintiff does not allege any conduct by Ginsburg in New York that would constitute a breach; specifically, Plaintiff does not allege that Ginsburg misused confidential information in New York or disparaged Plaintiff in New York.  (Id. at ¶ 7.)  Assuming *arguendo* that any breach did occur, which it did not, it could only have occurred in Florida.  Ginsburg has lived and worked in Florida at all times relevant to this matter.  (Id. at ¶ 12.)  Furthermore, Ginsburg has only visited New York for two days since his employment with Strike Miami ended, and other than to fly out of JFK Airport, Ginsburg did not enter New York City or Long Island, where Plaintiff maintains facilities.  (Id. at ¶¶ 7 & 16.)  In those two days in New York, he also did not speak with any individual then employed by Plaintiff.  (Id.)  Thus, when as here, "every act which gave rise to plaintiff's claim occurred outside the chosen forum," the Court should exercise its discretion to transfer the case to the more convenient forum.  Anchor Sav. Bank v. Transamerica Ins. Co., 634 F. Supp. 398, 400 (S.D.N.Y. 1986) (transferring a case to a district with a greater connection to the operative facts); see also Centennial Ins. Co. v. Burlington Air Express Inc., 97 Civ. 8512 (DLC), 1998 U.S. Dist. LEXIS 8910, at *9 (S.D.N.Y. 1998) (transferring a case where "none of the defendants' wrongful acts are alleged to have occurred in this district").[2]

---

[2] Plaintiff will undoubtedly claim that because the Agreement provides for the application of New York law, a New York court should hear this matter.  Even if New York law applies under a full choice of law analysis, where as here, the case involves a simple breach of contract, the applicable law is not an important factor.  See, e.g., Nat'l Patent Devel. Corp. v. Am. Hosp. Supply Corp., 616 F. Supp. 114, 119 (S.D.N.Y. 1984) ("[A] court's familiarity with the governing law . . . is entitled to little weight in cases where . . . the governing law presents no complex legal questions and has not been shown to be unclear, unsettled, or difficult"); Reinhard, 2007 U.S. Dist. LEXIS 59242 at *21 ("libel laws are similar enough that a judge will be familiar with the governing law no matter which state's statute ends up applying to the claim in this case").

Second, and more importantly, courts have found that "inconvenience to the defendants and non-party witnesses . . . dwarf[s] any inconvenience suffered by plaintiff in consequence of litigation." See Totilo v. Herbert, 07 Civ. 10991 (LAK), 2008 U.S. Dist. LEXIS 17263, at *5 (S.D.N.Y. Mar. 5, 2008) (transferring pursuant to 1404(a) because "all of the practical problems that attend the handling of litigation would be considerably reduced by litigation in Georgia, where the events occurred"); Berman v. Informix Corp., 30 F. Supp. 2d 653, 657 (S.D.N.Y. 1998) (recognizing that convenience of party and non-party witnesses is "probably the single-most important factor in the analysis of whether transfer should be granted") (internal quotation marks omitted).[3]  Here, Ginsburg, the most critical witness, resides in Florida.  (Ginsburg Decl. ¶ 12.)  Due to the fact that Ginsburg worked for Plaintiff's Florida subsidiary, and now currently works in Lucky Strike's Miami, Florida facility, it is likely that the majority of witnesses will be Ginsburg's past and current co-workers, who also reside principally in Florida. (Id. at ¶ 18.) Additionally, most relevant documents will also be found in Florida because the cause of action relates to Ginsburg's employment, which was with Plaintiff's Florida subsidiary, Strike Miami. See Saltzberg v. TM Sterling/Austin Assoc., Ltd., 746 F. Supp. 1225, 1227 (S.D.N.Y. 1990) (transferring action because most witnesses and relevant documents were located in the transferee district).

Finally, in this case, the Court should consider the relative means of the parties. Berman, 30 F. Supp. 2d at 659 (holding that if a "disparity exists between the parties, such as an individual suing a large corporation, the relative means of the parties may be considered"); Chong v. Healthtronics, Inc., CV-06-1287 (SJF)(MLO), 2007 U.S. Dist. LEXIS 45956, at *38 (E.D.N.Y. June 20, 2007) ("Since plaintiff is an individual and defendant is a corporation, the

---

[3] In the Complaint, other than Ginsburg, Plaintiff does not identify a single individual who was a witness to the alleged breach.

'relative means of the parties' factor weighs in favor of plaintiff"). In this case, Plaintiff has chosen to seek over a half a million dollars in damages from a former employee of its Florida subsidiary. In fact, Plaintiff seeks to recover more than double the amount that Ginsberg made in the less than two years he was an employee of Strike Miami. (Ginsburg Decl. ¶ 23.) Ginsburg has limited financial means, and Plaintiff has far more resources to litigate this matter. (Id. at ¶ 22.)

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court dismiss each of Plaintiff's claims against Defendant in its entirety, and grant such other and further relief as this Court may deem just and proper. In the alternative, Defendant respectfully requests that this Court transfer this action to the United States District Court for the Southern District of Florida.

Dated: August 25, 2008
      New York, New York

                             MORRISON & FOERSTER LLP


                             By: /s/ J. Alexander Lawrence
                                J. Alexander Lawrence
                                Sara N. Robbin

                             1290 Avenue of the Americas
                             New York, New York 10104-0012
                             Telephone: (212) 468-8000

                             Attorneys for Defendant
                             Bill Ginsburg